IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 15, 2014

## FELIX TAMAYO v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2009-B-1946    Cheryl Blackburn, Judge**

_____

**No. M2013-01273-CCA-R3-PC - Filed February 19, 2014**

_____

The Petitioner, Felix Tamayo, pled guilty to five counts of aggravated robbery and agreed to allow the trial court to determine the length and manner of service of his sentence. After a sentencing hearing, the trial court imposed consecutive twelve-year sentences for a total effective sentence of sixty years. On appeal, this Court affirmed the Petitioner's sentence. _State v. Felix Tamayo_, No. M2010-00800-CCA-R3-CD, 2011 WL 1876315, at *1 (Tenn. Crim. App., at Nashville, May. 16, 2011), _perm. app. denied_ (Tenn. Sept. 21, 2011). The Petitioner timely filed a petition seeking post-conviction relief on the basis that his guilty plea was not knowingly and voluntarily entered, which the post-conviction court denied after a hearing. The Petitioner appeals the post-conviction court's denial, maintaining that his guilty pleas were not knowingly and voluntarily entered because he was not advised that he could receive consecutive sentencing. After a thorough review of the record, the briefs, and relevant authorities, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

Chad Davidson, Nashville, Tennessee, for the Appellant, Felix Tamayo.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I. Facts

A Davidson County grand jury indicted the Petitioner for seven counts of aggravated robbery. The Petitioner pled guilty to five counts of aggravated robbery.

## A. Guilty Plea Submission Hearing

At the guilty plea submission hearing, the trial court reviewed the Petitioner's charges and the range of sentences that the Petitioner might receive at the subsequent sentencing hearing. The Petitioner affirmed his understanding of the charges and the range of sentences. The trial court asked if the Petitioner understood that he faced the possibility of consecutive sentencing, and the Petitioner responded affirmatively. The trial court reviewed the Petitioner's rights and the waiver of those rights as it related to the entry of a guilty plea. The Petitioner once again affirmed his understanding. The Petitioner denied that he was influenced by any medication and denied that he was experiencing any "difficulty" understanding his decision to plead guilty to the offenses. The Petitioner testified that he had reviewed the plea petition with his attorney and that his attorney had satisfactorily answered any questions. The State presented the following factual basis for the trial court's acceptance of the guilty plea:

> [O]n February the 20th of 2009 [there were] two separate incidents . . . . [T]he first incident in time occurred where Mr. Adam Willis and Ms. Mildred Whittendem (phonetic) were in a vehicle near a bowling alley. And the [Petitioner], as it turned out to be, approached and robbed them each of property with what at least to them appeared to be a handgun and fled in a vehicle. That was shortly after midnight on the 20th.
>
> Not too long after that the next incident involved Mr. Terry Coat (phonetic), Wynona Hilton (phonetic), and Nora Canfield (phonetic). This occurred, I believe, as they were leaving a club on Nolensville Road. Mr. Coat was walking Ms. Hilton and Ms. Canfield to their car. They had gotten seated in the car when a person came up behind Mr. Coat, struck him from behind, and knocked him to the ground. It turned out to be the person - - it was [the Petitioner], who had a gun or something that looked like a gun. They robbed Mr. Coat of property. They robbed Ms. Hilton of property and Ms. Canfield. In addition Mr. Coat was struck several times with this gun. [The Petitioner's] accomplice had some type of rod or long item that he was hitting Mr. Coat in the back of the head with. He also broke out the windshield of the vehicle that belongs to one of these ladies and hit one of the ladies in the leg . . . when she didn't produce her handbag quickly enough. But in any event all five of these people were robbed that night.

And eventually [the Petitioner] and this group of people came to be suspects. [The Petitioner] was interviewed by detectives, and he admitted to these two incidents during the interview and said he was the person with the gun. He didn't say it was a real gun. But he did admit he was the person that had a fake gun and robbed these people. And as I said, this was a recorded interview. And that would be the bulk - - in fact, that would be all of the proof, that it was this [Petitioner].

The Petitioner entered his plea of guilt as to each of the five charges. The trial court accepted the plea and determined that the Petitioner's pleas were "voluntarily and factually based."

## B. Post-Conviction Hearing

At the post-conviction hearing, the Petitioner testified that he met with his attorney ("Counsel") four or five times over thirteen or fourteen months. The Petitioner stated that he received various offers from the State. Initially he wished to proceed to trial, but later he "didn't want to take the trial." The Petitioner said that he believed that the potential amount of time he stood to serve if he pled "open" to the five counts was twelve years. He said he based this on the State's offer for the Petitioner to plead to five of the seven counts with a sentencing range of eight to twelve years. He explained that this "made sense to [him], so [he] ran with it."

The Petitioner testified that it was not until the day of the sentencing hearing that he realized he could potentially serve up to sixty years. He said that he told Counsel "I did not plead to this" and that he wanted to "take [his] plea back." In response, Counsel told the Petitioner that, "It was too late because [he] signed the paperwork."

The Petitioner testified that he understood that each of the counts was a "separate case." He said that Counsel discussed with him possible defenses for each of the robberies. He also recalled that Counsel argued to suppress the Petitioner's statements to police but that the motion was denied.

The Petitioner testified that he had pled guilty to theft of property before and received a probation sentence. The Petitioner said that he did not have any difficulty understanding his previous plea but that this was "the first really pretty serious case." The Petitioner stated that he was currently twenty-two years old.

On cross-examination, the Petitioner stated that he had completed the eighth grade.

When asked why at the guilty plea submission hearing he told the trial court he had completed the tenth grade, the Petitioner said, "I don't remember that." The Petitioner agreed that the State's previous offers had also been for a set number of years in the range of twenty to twenty-two years. Despite the State's consistent offers for sentences around twenty-years, the Petitioner stated that he believed the final offer was for a maximum of twelve years.

The Petitioner testified that he understood that, because the trial court had denied his motion to suppress, his statement admitting to each of the robberies would have been introduced to the jury. The Petitioner stated that his defense at trial would have been that the police coerced him into admitting to the crimes.

The Petitioner testified that, even though the trial court discussed consecutive sentencing with him during the plea submission hearing, he did not understand "what consecutive concurrent was." The Petitioner stated that he did not remember the trial court telling him at the plea submission hearing that his effective sentence might be eight years or it might be sixty years. The Petitioner stated that he asked Counsel instead of the trial court about why the trial court said he could receive sixty years and that Counsel told him "twelve years."

The Petitioner testified that he lied when he told the trial court at the plea submission hearing that he understood its explanation of consecutive sentencing. He said that he did so because he wanted to "hurry up and get out of here."

Gonzalo Villegas, the Petitioner's brother, testified that he was present while Counsel reviewed the State's offer with the Petitioner. Mr. Villegas said that he never heard Counsel tell the Petitioner he could potentially receive an effective sixty-year sentence. Mr. Villegas said that he encouraged the Petitioner to take the State's offer of eight to twelve years. Mr. Villegas said that he told the Petitioner that, if he did it, he should "pay the time," but the eight to twelve-year offer was one that was not so excessive as to "throw [his] life away." Mr. Villegas said that he and the Petitioner discussed the State's offer before the Petitioner went into the courtroom and pled. Mr. Villegas maintained that neither of them realized the State's offer allowed for a sixty-year sentence.

On cross-examination, Mr. Villegas testified that he was present when Counsel conveyed the offer, but he did not hear Counsel review the Petitioner's rights with him or observe the Petitioner sign the plea agreement. Mr. Villegas agreed that he did not know what discussions took place between Counsel and the Petitioner after he left the room.

Mr. Villegas testified that he sat through the sentencing hearing and "everything was

-4-

not right." He said he observed the Petitioner and could tell that he was "nervous" and "just wanted to get rid of it." Mr. Villegas opined that the Petitioner had his mind set on twelve years and did not "know what he got involved in." Mr. Villegas said he watched the Petitioner agreeing, but he did not believe he was in the position to yell to the Petitioner across the room "it's not right."

Counsel testified that he had been licensed as an attorney since 2004 and approximately eighty or ninety percent of his practice was criminal defense work. Counsel recalled that the State made two alternative offers to the Petitioner: (1) plead to between three and five of the counts for a twenty-three-year sentence; or (2) plead to a number of the counts with an eight to thirty year sentencing range. Counsel conveyed the offers to the Petitioner and negotiated with the State on these offers. The State amended the offer to include a guilty plea to all counts of the indictment for a twenty-year sentence. Counsel said that the Petitioner rejected all of the offers, and the case was set for trial. Counsel agreed that discussions about any of those offers would have required him to discuss the possibility of consecutive sentencing with the Petitioner. Counsel said that he did not have a "specific recollection of that conversation" but was "certain" he would have explained consecutive sentencing to the Petitioner.

Counsel testified that, after losing the suppression hearing, the Petitioner agreed to accept the State's offer. Counsel said that he reviewed the plea petition with the Petitioner. He said that he talked with the Petitioner about the fact the plea was "open" with no agreement as to the sentence. Counsel said that he anticipated that the trial court would impose a twenty to twenty-five-year sentence. Counsel said that he also expected the trial court to impose consecutive sentencing.

Counsel testified that he did not recall the Petitioner ever stating he wished to withdraw his plea or that he believed his sentence would be twelve years. Counsel confirmed that the Petitioner's brother was present during some of his discussions with the Petitioner. Counsel said that he recalled that Mr. Villegas was "fairly adamant" that his brother should not take the plea and advised the Petitioner that he was "throwing his life away."

On cross-examination, Counsel estimated that he met with the Petitioner between ten and fifteen times. Counsel said that in light of the Petitioner's full admission to the charged offenses, he "didn't have a very good defense." Counsel agreed that he advised the Petitioner to take the offer because he "didn't see any real hope that we would be successful at trial."

After hearing the evidence, the trial court took the issue under advisement and later issued an order denying the Petitioner relief. It is from this judgment that the Petitioner now

appeals.

## II. Analysis

On appeal, the Petitioner contends that because he received the ineffective assistance of counsel his guilty plea was not knowingly and voluntarily entered. The State responds that the Petitioner has failed to prove that Counsel was ineffective or that his guilty pleas were involuntary. We agree with the State.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.3d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the

facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 689-90.  In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462.  Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation.  *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996).  In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)).  Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result.  *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980).  "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation.  However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad,* 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002).  This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).  In the context of a guilty plea, as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea.  Therefore, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (footnote omitted); *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

In the its written order, the trial court provided the following reasoning in support of its denial of relief:

> [T]he guilty plea transcript belies Petitioner's claims.  During the plea colloquy the Court explained to Petitioner his potential exposure and the possibility of concurrent or consecutive sentencing, which would result [in] a total effective sentence of as low as 8 years or up to 60 years.  Petitioner affirmed that he understood.  Petitioner took a risk by electing to have the sentencing hearing in lieu of one of the State's offers setting the time to serve.  It appears that Petitioner is experiencing "buyer's remorse."

. . . .

The Court notes that during [the] hearing Petitioner was actively engaged in the plea colloquy; Petitioner did not merely respond "yes" or "no" to all of the Court's questioning. For example, when there was an issue as to how many charges were involved in the plea, Petitioner confirmed that there were only five remaining charges. Then, when asked if he was satisfied with counsel, Petitioner advised the Court he felt like he needed more time but ultimately agreed that counsel had done everything requested. Further, after the State provided a recitation of the underlying facts, before indicating the facts were generally true, Petitioner took issue with the charge involving Terry Coat explaining his involvement in the robbery. The Court then explained the concept of criminal responsibility [and] Petitioner indicated he understood.

. . . .

A review of the record including the guilty plea hearing affirmatively demonstrates that [P]etitioner's guilty plea was made with an awareness of the consequences, and, as such, the guilty plea was voluntarily and knowingly entered.

. . . .

Petitioner has failed to meet his burden of proving by clear and convincing evidence that his trial counsel was ineffective or that he was prejudiced by any alleged deficiency.

(Citations omitted).

We agree with the post-conviction court that the Petitioner has failed to prove by clear and convincing evidence that his plea was not made knowingly and voluntarily. *See* T.C.A. § 40-30-110(f) (2006); *Momon*, 18 S.W.3d at 156. Counsel's testimony and the guilty plea hearing transcript indicate that the Petitioner was advised and understood the potential range of sentence. The Petitioner has not shown that "but for" Counsel's alleged errors, he would have insisted on proceeding to trial. *See Walton*, 966 S.W.2d 54, 55. Therefore, the Petitioner is not entitled to relief on this issue.

## II. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the

-8-

post-conviction court properly denied post-conviction relief.  Accordingly, we affirm the judgment of the post-conviction court.


_____
ROBERT W. WEDEMEYER, JUDGE